IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,

    **Plaintiff,**

            **v.**                  **Criminal No.** 19-581 (FAB)

NATANAEL ACEVEDO-OSORIO,

    **Defendant.**

## OPINION AND ORDER

BESOSA, District Judge.

Before the Court are the parties' briefs on the imposition of restitution under the Mandatory Victims Restitution Act ("MVRA") and a special monetary assessment of $5,000 under the Justice for Victims of Trafficking Act ("JVTA").  (Docket Nos. 96 and 98.) The case was remanded from the First Circuit Court of Appeals to determine these issues.  (Docket Nos. 86 and 87.)  For the reasons set forth below, the Court **DENIES** the government's request for a restitution of $3,275.00, allows restitution of $2,458, and imposes a special monetary assessment of $5,000 under the JVTA.

## I.  Background

On November 18, 2019, a grand jury alleged that Natanael Acevedo-Osorio produced child pornography (count one), coerced and enticed a minor (count two), and received child pornography (count three).  (Docket No. 12.)  Acevedo entered into a plea agreement

on January 30, 2020, and pled guilty to count two of the indictment. (Docket Nos. 32 and 33.)  The Court sentenced him on August 16, 2021 to 292 months, a $100 special monetary assessment, and a $5,000 assessment under the JVTA. (Docket No. 63.)  The Court also gave the government ninety days to provide all information related to restitution.  Id.  On November 8, 2021, the Court granted the government's motion and ordered Acevedo to pay the victim ("S.Q.R.") the amount of $3,275. (Docket No. 72.)  An amended judgment was entered on July 15, 2022. (Docket No. 79.) Acevedo appealed. (Docket Nos. 67 and 85.)

The First Circuit Court of Appeals affirmed the sentence but vacated the restitution order because the Court did not determine whether S.Q.R.'s mother is also a victim under the MVRA.  The court of appeals also vacated the special assessment under the JVTA because the Court failed to make a finding that Acevedo was not indigent. (Docket No. 87.)  The court of appeals remanded these issues back to the Court. (Docket Nos. 87 and 88.)

Following the court of appeals' mandate, the Court ordered the parties to brief the Court on their position concerning the restitution order under the MVRA and the special assessment under the JVTA. (Docket No. 89.)  The defendant's brief opposed the imposition of both the restitution order and the special

Criminal No. 19-581 (FAB)                                                3

assessment.  (Docket No. 96.)   The government's brief supported

imposing both of them.  (Docket No. 98.)

## II. Legal Standards

### A.    The Mandatory Victims Restitution Act

Restitution is "a mechanism for making a victim whole by

restoring the monetary equivalent of the losses suffered in the

consequence of the defendant's criminal activity." United States

v. Salas-Fernández, 620 F.3d 45, 48 (1st Cir. 2010).  Federal

courts cannot award restitution without authorization from

Congress.  United States v. Papagno, 629 F.3d 1093, 1096 (D.C.

Cir. 2011).  The judiciary first acquired this authority in 1925,

"when Congress passed the Federal Probation Act and, even after

that, [courts] used the power sparingly." United States v.

Aguirre-González, 597 F.3d 46, 50 (1st Cir. 2010) (citation

omitted).  This initial recalcitrance subsided, however, prompting

courts to impose restitution as "a regular part of a criminal

defendant's sentencing." Cortney E. Lollar, What is Criminal

Restitution?, 100 Iowa L. Rev. 93, 95 (2014).  In 1996, Congress

enacted the Mandatory Victims Restitution Act ("MVRA") to "provide

those who suffer the consequences of crime with some means of

recouping personal and financial losses." United States v. Perry,

360 F.3d 519, 530 (6th Cir. 2004) (quoting H.R. Rep. No. 104-16,

at 5 (1995)); see Dolan v. United States, 560 U.S. 605, 612 (2010)

(noting that Congress passed the MVRA "to ensure that victims of crime receive full restitution").

Under the MVRA, a defendant convicted of a crime of violence "[shall] make restitution to his victim." United States v. Innarelli, 524 F.3d 286, 292 (1st Cir. 2008) (citing 18 U.S.C. § 3663A(a)). Restitution is imposed "in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant." 18 U.S.C. § 3664(f)(1)(A). Courts are "not expected to undertake a full-blown trial" to determine the appropriate amount of restitution. United States v. Naphaeng, 906 F.3d 173, 178 (1st Cir. 2018) (citing S. Rep. No. 104-179, at 18 (1995) (noting that restitution proceedings are not to "become fora for the determination of facts and issues better suited to civil [actions]")).

District courts "[resolve] uncertainties with a view toward achieving fairness to the victim." United States v. Alphas, 785 F.3d 775, 787 (1st Cir. 2015) (quotation omitted). The MVRA analysis is a "fact specific undertaking and will vary case-by-case." In re Akebia Therapeutics, Inc., 981 F.3d 32, 38 (1st Cir. 2020) (citation omitted). A restitution order need not comply with "standards of scientific precision." United States v. Sánchez-Maldonado, 737 F.3d 826, 828 (1st Cir. 2013); United States

v. Vaknin, 112 F.3d 579, 587 (1st Cir. 1997) (holding that an award imposed pursuant to the MVRA requires only a "modicum of reliable evidence")); United States v. González-Calderón, 920 F.3d 83, 85 (1st Cir. 2019) (holding that a restitution order will pass muster if it is "record-based and constitutes a fair appraisal of the victim's actual losses") (citation and internal quotation omitted).  Restitution cannot, however, rest on mere "speculation and surmise."  Vaknin, 112 F.3d at 587.  The United States shoulders the burden of establishing the loss amount by a preponderance of the evidence.  United States v. Vega-Martínez, 949 F.3d 43, 54 (1st Cir. 2020); see 18 U.S.C. § 3664(e).

**B.    The Justice for Victims of Trafficking Act**

The JVTA provides that "the court shall assess an amount of $5,000 on any non-indigent person or entity convicted of an offense under . . . chapter 117 (relating to transportation for illegal sexual activity and related crimes.")  18 U.S.C. § 3014(a)(4).  "[T]his language means that the district court has no choice but to impose the $5,000 assessment if it determines that the defendant is non-indigent."  United States v. Acevedo-Osorio, 118 F.4th 117, 138 (1st Cir. 2024) (internal quotations omitted).  The statute, however, does not specify how a court should assess indigence and the First Circuit Court of Appeals has

Criminal No. 19-581 (FAB)                                                6

not provided guidance on this issue.  United States v. Procell,
31 F.4th 32, 38 (1st Cir. 2022).

Other circuits that have dealt with the issue have stated
that "the district court must resolve two basic questions in
assessing the defendant's indigency: (1) is the defendant
impoverished *now*; and (2) if so, does the defendant have the means
to provide for himself so that he will *not always* be impoverished?"
United States v. Rosario, 7 F.4th 65, 70 (2d Cir. 2021) (quoting
United States v. Shepherd, 922 F.3d 753, 758 (6th Cir. 2019)).
Other circuit courts have allowed district courts to consider a
defendant's future earning potential when determining indigency
for JVTA purposes.  See id.; United States v. McMiller, 954 F.3d
670, 675 (4th Cir. 2020); Shepherd, 922 F.3d at 758-59; United
States v. Graves, 908 F.3d 137, 141 (5th Cir. 2018); United States
v. Kelley, 861 F.3d 790, 802 (8th Cir. 2017); United States v.
Strange, 692 F.App'x 346, 348-49 (9th Cir. 2017); United States v.
Janatsch, 722 F.App'x 806, 810-11 (10th Cir. 2018).  This
consideration makes sense because a defendant's payment obligation
continues for at least twenty years after his sentencing.
Shepherd, 922 F.3d at 758.

[Continued Next Page]

### III. Discussion

#### A.    S.Q.R.'s mother is a victim under MVRA

The United States seeks $3,275.00 in restitution for S.Q.R.'s mother, Luz Ramos.  (Docket No. 98.)  As a preliminary matter, the Court must determine whether Ramos is a "victim."  See Naphaeng, 906 F.3d at 181 ("The first step in fashioning a supportable restitution order is to identify victims who have suffered pecuniary losses as a result of the defendant's criminal activity.") (citation omitted).  A "victim" for purposes of the MVRA is:

> A person directly and proximately harmed as a result of
> the commission of an offense for which restitution may
> be ordered [. . .] In the case of a victim who is under
> the age of 18 years of age . . . the legal guardian of
> the victim or . . . another family member, or any other
> person appointed as suitable by the court, may assume
> the victim's rights under [the MVRA].

18 U.S.C. § 3663A(a)(2).  There is no controversy and the Court agrees that S.Q.R. is Acevedo's victim.  Ramos may assume S.Q.R.'s rights because S.Q.R. is a minor.  Ramos as S.Q.R.'s representative, however, is only allowed "to collect the restitution owed to the victim for the losses the victim suffered . . . . It does not separately authorize restitution for the losses of the victim's representatives.  Acevedo-Osorio, 118 F.4th at 141 (emphasis in the original).  Therefore, to order restitution based on the loss of Ramos's car, the Court must determine whether Ramos

Criminal No. 19-581 (FAB)                                              8

is also a victim.  Acevedo argues that Ramos does not qualify as
a victim under the MVRA.  The Court disagrees.

The MVRA mandates that the United States Probation
Office ("USPO") shall "include in its presentence report [. . .]
information sufficient for the court to" issue a restitution order.
18 U.S.C. § 3664(a).  The USPO was not able to determine in the
presentence report an amount for restitution based on the
information in the Victim Impact Statement.  (Docket No. 57 at
p. 34, n. 9.)  Ramos, however, requested $6,500.00 using this
Court's Victim Impact Statement form (hereinafter, "Victim Impact
Statement").  Id. at p. 16, n. 6.  The government calibrated the
amount submitted by Ramos to comport with the MVRA.

Acevedo regularly threatened S.Q.R. to coerce and entice
her to engage in sexual activity.  Id. at pp. 12-14.  On August 17,
2019, S.Q.R. had returned to Vieques, and Acevedo told S.Q.R. that
she had to leave with him.  When she refused, Acevedo threatened
to do something to her mother's car.  On August 19, 2019, Ramos'
car was burned on Acevedo's order.  Id. at pp. 14, 16.  Therefore,
he harmed Ramos during the commission of his crime of coercing and
enticing S.Q.R. to engage in sexual activity.  (Docket No. 57 at
p. 14; Docket No. 12.)

Restitution is warranted if the defendant caused "damage
to or loss or destruction of property" belonging to the victim of

an offense.  18 U.S.C. § 3663A(b)(1).  Because Ramos's car was
destroyed, Acevedo, who ordered the car be burned, is liable for
the value of the vehicle.  When "return of the property [. . .] is
impossible, impracticable, or inadequate," the defendant must pay
the greater of "the value of the property on the date of the
damage, loss, or destruction," or "the value of the property on
the day of sentencing."  Id.

     The government contends that the 1998 Toyota Camry's
value on the day of sentencing was $3,275 per the National
Automobile Dealers Association ("N.A.D.A").  (Docket No. 70 at
p. 3.)  The Kelley Blue Book trade-in range of a 1998 Toyota Camry
on November 5, 2021 was between $1,936 to $2,979.  Id. at p. 8.
The Blue Book also indicates that the trade-in value was $2,458.
Id.  The value expressed in the Blue Book is generally a reliable
indicator of the vehicle's fair value.  See United States v. Davis,
Case No. 13-44, 2015 U.S. Dist. LEXIS 59665, at *17 (E.D. Ky.
May 6, 2015) (noting that the restitution amount "is expressly
based on the truck's Bluebook value, a reliable and objective
indicator of the vehicle's fair market value"); United States v.
Rivera-Solís, 733 F.supp.3d 46, 53 (D.P.R. May 8, 2024) (Besosa,
J.).  According to the Kelley Blue Book, a 1998 Toyota Camry
depreciated 26% or $583 in the last three years and has a current
resale value of $1,645, which means the value in 2022 was $2,228.

See   https://www.kbb.com/toyota/camry/1998/ce-sedan-4d/   (last

visited May 20, 2025);

see also  https://www.kbb.com/toyota/camry/1998/  (last visited

May 12, 2025) (stating that the 1998 Toyota Camry CE Sedan 4D "had

a starting MSRP of $20,464.00").  Considering the value of a 1998

Camry in 2022 was $2,228, the Court finds the trade-in value of

$2,458 to be a reliable and objective indicator of the car's value.

See id.

Accordingly, the United States' request for $3,275 in

restitution for the loss of Ramos's 1998 Toyota Camry is **DENIED**.

Acevedo will pay $2,458 in restitution.

**B.  Acevedo is Not Indigent pursuant to the JVTA**

Acevedo requests that the Court find that he is indigent

because (1) there was not enough information to make a finding on

his ability to pay the assessment, (2) there was a previous finding

of indigency to get a court-appointed attorney, (3) his monthly

income is low and is used to support his four children, (4) his

age when released, and (5) his sex-offender status will limit his

employment opportunities.  (Docket No. 96 at pp. 3-6.)  The

government states Acevedo is not indigent because he has

consistently worked as tour guide, is skilled in construction, is

healthy and has no history of health problems, and his less-than

ideal economic situation is not sufficient to meet his burden of
establishing indigency.  (Docket No. 98 at pp. 3-4.)

        The Court finds that Acevedo has not met his burden of
establishing that he is indigent pursuant to section 3014.
Relevant to the first <u>Shepherd</u> question – whether he is
impoverished now - is the statement of his mother-in-law that
Acevedo had a job that allowed him to save some money.  <u>See</u> Docket
No. 53 at p. 6.  The Court is unaware of how much Acevedo was able
to save, but his "low" salary was sufficient to support his four
children and still allow him to save money.  He has no outstanding
debts.  (Docket No. 57 at ¶¶ 111-15.)  Acevedo argues that the
USPO was not able to determine his ability to pay during
sentencing, and therefore, there is no basis for the imposition of
the JVTA.  (Docket No. 96 at p. 3.)  What the USPO stated, however,
was that there was not enough information to determine if he was
indigent or not.  <u>See</u> Docket No. 75 at p. 10.  In fact, the
Presentencing Investigation Report did determine that Acevedo
could not pay a fine, which the Court considered when deciding not
to impose a fine.  (Docket No. 57 at ¶ 115; Docket No. 75 at
p. 32.)  But, unlike the JVTA assessment, which is mandatory, a
district court may decide not to impose a fine.  <u>United States v.</u>
<u>Booker</u>, 543 U.S. 220, 259-60 (2005) (holding that Sentencing
Guidelines are advisory, not mandatory); <i>see also</i> 18 U.S.C.

§ 3571(a) ("A defendant who has been found guilty of an offense *may* be sentenced to pay a fine." (emphasis added)).

Additionally, the Court's previous determination that Acevedo was indigent it appointed counsel for Acevedo is unpersuasive. "This is a matter of common sense: a criminal defendant might be unable to pay a six-figure legal bill and yet still possess the means of subsistence. Although all indigent defendants might be financially unable to obtain adequate legal counsel, the inverse is not necessarily true." Shepherd, 922 F.3d at 759. Therefore, the fact that counsel was appointed for Acevedo is not sufficient to find indigency under the JVTA.

Acevedo's next two arguments focus on his ability to pay in the future, the second Shepherd question. He states that any earnings he may make during his sentence will be minimal. He also argues that when released, he will be in his fifties and unable to work in his previous profession because he will have to register as a sex offender.

A defendant's future ability to earn includes potential in-prison earnings. See United States v. Goodin, 815 F.App'x 860, 868 (6th Cir. 2020). "Sentenced inmates are required to work if they are medically able . . . . Inmates earn 12 cents to 40 cents per hour." FEDERAL BUREAU OF PRISONS, WORK PROGRAMS, https://www.bop.gov/inmates/custody_and_care/work_programs.jsp

(last visited May 27, 2025). These fees are indisputably meager, but they are funds that can be assigned to Acevedo's financial obligations. See United States v. Easterling, 811 F.App'x 306, 308-09 (6th Cir. 2020). Additionally, compared to other similarly situated defendants, Acevedo appears to be in better financial health than others who have been ordered to pay the JVTA assessment. See Shepherd, 922 F.3d at 756-57 (defendant ordered to pay JVTA assessment despite facing $55,000 in debt when released from prison); Goodin, 815 F.App'x at 868 (defendant ordered to pay JVTA assessment despite having over $175,000 in debt).

Acevedo's argument as to his age when released is also not convincing. While it is true that he will be in his fifties when released, Acevedo has twenty years to pay the remaining balance of the assessment. See Norton, 48 F.4th at 135. He is a healthy individual and has no history of health problems. See Docket No. 57 at ¶¶ 99-100. He is skilled in construction work, has a high school diploma obtained through GED program, and wants to further his education by completing an English as a second language course, a plumbing course, and a barbering course, Id. at ¶¶ 47, 105-06, all of which he may pursue and complete while incarcerated. Finally, the alleged issue of being registered as a sex offender is also not persuasive. This argument conflicts with the statute, which contemplates assessing defendants

Criminal No. 19-581 (FAB)                                          14

registered as sex offenders.   Congress determined that section
3014 applies to defendants whose convictions fall under five
chapters of the criminal code.   One of those chapters is 117, which
relates to transportation for illegal sexual activity and related
crimes.   Offenders who commit crimes under this chapter – like
Acevedo - may have to register as a sex offender.   18 U.S.C.
§ 3014(a)(4).   Thus, Acevedo cannot use his sex-offender status to
shield him from paying the assessment.   See Shepherd, 922 F.3d
at 760.

Accordingly, the Court finds Acevedo not to be indigent,
and orders him to pay the $5,000 assessment pursuant to the JVTA.

## IV. Conclusion

For the reasons set forth above, the United States' request
for $3,275 in restitution for the loss of Ramos's 1998 Toyota Camry
is **DENIED**.   Acevedo will pay $2,458 in restitution to Ms. Ramos.

The Court finds that Acevedo is not indigent, and orders him
to pay the $5,000 assessment under the JVTA.

**Acevedo's re-sentencing hearing is now set for June 16, 2025
at 9:00 a.m. in the Old San Juan Courtroom 4 before the
undersigned.**

**IT IS SO ORDERED.**

San Juan, Puerto Rico, May 28, 2025.

s/ Francisco A. Besosa
FRANCISCO A. BESOSA
SENIOR UNITED STATES DISTRICT JUDGE